IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02067-CMA-NRN

TONY C. TUCKER,

Plaintiff,

v.

SANTANDER CONSUMER USA, *d/b/a/ Chrysler Capital*,

Defendant.

---

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)
(Dkt. #30)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This matter is before the Court pursuant to an Order (Dkt. #34) issued by Judge Christine M. Arguello referring Defendant Santander Consumer USA Inc. d/b/a Chrysler Capital's ("Defendant" or "Chrysler Capital") Motion to Dismiss Pursuant to Rule 12(b)(6). (Dkt. #30.) Plaintiff Tony C. Tucker filed a response (Dkt. #38), and Chrysler Capital filed a reply. (Dkt. #39.) The Court heard argument from the parties (*see* Dkt. #40) on March 17, 2022. Now being fully informed and for the reasons discussed below, it is hereby **RECOMMENDED** that the subject motion (Dkt. #30) be **GRANTED**.

## **BACKGROUND**[1]

This lawsuit relates to the financing of a Dodge Caravan purchased by Mr. Tucker via a Retail Installment Sale Contract ("Contract") that was then assigned to Defendant. Mr. Tucker alleges that Defendant violated: (1) § 5-2-201 of the Colorado Uniform Consumer Credit Code ("UCCC") by charging a 21% interest rate, and (2) the Truth in Lending Act ("TILA") by failing to make accurate disclosures. He seeks over $650,000 of monetary damages and "[w]ants to be relieved of the loan . . . ."

## **LEGAL STANDARDS**

### **I.  Pro Se Litigants**

Because Mr. Tucker proceeds pro se, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (the court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927

---

[1] Unless otherwise noted, all non-conclusory allegations are taken from Mr. Tucker's Amended Complaint (Dkt. #11) and are presumed to be true for the purposes of this motion to dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II.     Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court's function on a Rule 12(b)(6) motion is not to "weigh the potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief can be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" do not count. *See Twombly*, 550 U.S. at 555, *Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1293 (10th Cir. 2017).

## ANALYSIS

## I.     The UCCC

Mr. Tucker alleges that Defendant violated § 5-2-201 of the UCCC by charging 21% interest, when the most it could legally charge was 12%. Mr. Tucker misapprehends this statute.

Section 5-2-201 provides in relevant part as follows:

> (1) With respect to a consumer loan other than a supervised loan, including a revolving loan, a lender may contract for and receive a finance charge calculated according to the actuarial method not exceeding twelve percent per year on the unpaid balance of the amount financed.
>
> (2) With respect to a supervised loan or a consumer credit sale, except for a loan or sale pursuant to a revolving account, a supervised lender or seller may contract for and receive a finance charge, calculated according to the actuarial method, not exceeding the equivalent of the greater of either of the following:
>
> (a) The total of:
>
> (I) Thirty-six percent per year on that part of the unpaid balances of the amount financed that is one thousand dollars or less;
>
> (II) Twenty-one percent per year on that part of the unpaid balances of the amount financed that is more than one thousand dollars but does not exceed three thousand dollars; and
>
> (III) Fifteen percent per year on that part of the unpaid balances of the amount financed that is more than three thousand dollars; or
>
> (b) Twenty-one percent per year on the unpaid balances of the amount financed.

Colo. Rev. Stat. § 5-2-201(1)–(2).

Thus, the UCCC contains two interest rate limitations: "a 12% per annum limit for consumer loans made by unlicensed lenders, § 5-2-201(1); and a 21% per annum limit for licensed lenders and sellers of goods in a consumer credit sale, § 5-2-201(2)(b), and for assignees of such sellers. Section 5-1-301(42)." *De La Rosa v. W. Funding, Inc.*, 24 P.3d 637, 639 (Colo. App. 2001) (statutory history omitted). Relatedly, a "consumer credit sale" is defined as:

> [A] sale of goods, services, a mobile home, or an interest in land in which:
>
> (I) Credit is granted or arranged by a person who regularly engages as a seller in credit transactions of the same kind or pursuant to a seller credit card;
>
> (II) The buyer is a person other than an organization;

4

> (III) The goods, services, mobile home, or interest in land are purchased primarily for a personal, family, or household purpose;
>
> (IV) Either the debt is by written agreement payable in installments or a finance charge is made; and
>
> (V) With respect to a sale of goods or services, the amount financed does not exceed seventy-five thousand dollars.

Colo. Rev. Stat. § 5-1-301(11)(a)).

The transaction at issue here was a consumer credit sale, not a loan, and therefore the 21% interest rate limitation contained in § 5-2-201(2) applies. In so finding, the Court is guided by the Colorado Court of Appeals' decision in *De La Rosa*. In that case, a vehicle purchaser filed suit against the assignee of promissory notes executed in connection with the sale, alleging that the dealership's assignee was an unlicensed lender and therefore limited under the UCCC to collecting interest at 12%. The Colorado Court of Appeals rejected that argument. Given the similarities to the case at bar, the Court will quote at length the court of appeals' reasoning:

> We conclude that these transactions are consumer credit sales, not consumer loans. First, a characteristic that distinguishes loans from credit sales is that a credit sale must involve the sale of goods, services, or an interest in land. Without such a sale, the transaction will be considered a loan. *See Central Finance Co. v. Stevens*, 221 Kan. 1, 558 P.2d 122 (1976). It is undisputed that the transactions at issue here involved the sale of goods.
>
> Second, in a true consumer loan transaction, the borrower usually has some direct contact with and receives money from the lender, even if the lender issues a check payable to the borrower and a seller of consumer goods to fund the loan. *See Peoples Finance & Thrift Co. v. Perry*, 30 Utah 2d 282, 516 P.2d 1400 (1973) (plaintiff borrowed money from a bank to purchase a vehicle, then used the proceeds of the loan to purchase vehicle in a cash transaction; court held the transaction between the bank and plaintiff was a consumer loan, not a consumer credit sale). It is undisputed here that plaintiffs did not receive any money directly from defendant, the credit was granted only for a specific purchase, and there was no direct contact between plaintiffs and defendant.

5

> Further, plaintiffs signed promissory notes payable to the dealership; no notes or instruments of indebtedness were executed between defendant and plaintiffs; and defendant took possession of the notes only through assignments. *See First National Bank v. LaJoie*, 537 P.2d 1207 (Okla. 1975) (where purchaser bought vehicle from dealer by conditional sales contract, court held transaction was a consumer credit sale, and a bank was merely an assignee of the agreement between seller and buyer because buyer dealt only with the dealer, installment sales contract was between buyer and seller, and buyer did not enter into an instrument of indebtedness with bank); *cf. Central Finance Co. v. Stevens, supra* (where finance company lent money to the purchasers of an automobile as borrowers, and borrowers executed promissory note to finance company and granted finance company a security interest in the automobile, transaction was a consumer loan, not a consumer credit sale, because sale was consummated between car dealership as seller and borrowers as purchasers).
>
> Hence, because the transactions were consumer credit sales and defendant took the contract rights as an assignee of the seller, defendant is legally entitled to charge 21% interest. See §§ 5-1-301(42) & 5-2-201(2)(b).

*De La Rosa*, 24 P.3d at 640–41.

Similarly, this case involved the sale of goods, i.e., a Dodge Caravan, that was purchased by an individual, Mr. Tucker, on credit, credit that was granted only for a specific purpose—to purchase a vehicle for personal use. The contract was between Mr. Tucker and the dealership, not Chrysler Capital. Car dealerships, generally speaking, regularly engage in the kind of credit transactions involved here, and Mr. Tucker does not allege otherwise. Finally, the debt was payable in installments and did not exceed the statutory maximum amount. Thus, it was a consumer credit sale.

Mr. Tucker concedes as much but argues that the transaction was still unlawful under § 5-2-201(3).[2] That subsection provides that,

---

[2] In his response, Mr. Tucker states, "Now, in the present case here, the Plaintiff did not contend that a lender cannot charge 21% interest in a consumer credit obligation, but instead contended that the defendant (Chrysler Capital) cannot violate 5-2-201(2)(3)(B) [sic] therefore, Chrysler Capital cannot charge 21% interest in a consumer credit obligation, that is a 'consumer credit sale.'" (Dkt. #37 at 4.)

> (a) Except as provided in paragraph (b) of this subsection (3), the finance charge for a supervised loan or consumer credit sale pursuant to a revolving credit account, calculated according to the actuarial method, may not exceed twenty-one percent per year on the unpaid balance of the amount financed.
>
> (b) Notwithstanding paragraph (a) of this subsection (3), if there is an unpaid balance on the date as of which the finance charge is applied, the creditor may contract for and receive a minimum finance charge not exceeding fifty cents.

Colo. Rev. Stat. § 5-2-201(3)(a)–(b). Mr. Tucker argues that the financing charge of $9,238.96 was much more than the fifty cents allowed by statute. However, § 5-2-201(3)(b) does not apply because the sale at issue did not involve a "revolving credit account." "Revolving credit" is defined as an arrangement pursuant to which:

> (a) A creditor may permit a consumer, from time to time, to purchase or lease on credit from the creditor or to obtain loans from the creditor;
>
> (b) The amounts financed and the finance and other appropriate charges are debited to an account;
>
> (c) The finance charge, if made, is computed on the account periodically; and
>
> (d) Either the consumer has the privilege of paying in full or in installments or the creditor periodically imposes charges computed on the account for delaying payment and permits the consumer to continue to purchase or lease on credit.

Colo. Rev. Stat. § 5-1-301(38). This type of open-ended credit is not anticipated by the installment contract at issue here, which instead "represents a closed-end consumer credit transaction because the sale of the vehicle to [Mr. Tucker] did not contemplate repeated transactions and the finance charge was not dependent on the outstanding unpaid balance on his account." *McLean v. Big Dog Grp., LLC*, No. CV 15-40-JWD-EWD, 2016 WL 3211514, at *10 (M.D. La. Mar. 11, 2016).

For these reasons, Mr. Tucker does not state a claim under the UCCC.

7

## II. The TILA

Next, Mr. Tucker contends he did not receive accurate disclosures as required by TILA. His claim, however, appears to be premised on the argument that the disclosures were inaccurate because the interest rate and finance charges were too high under the UCCC. But, as explained above, this argument fails. To the extent that Mr. Tucker argues that he did not receive TILA disclosures at all (which Mr. Tucker did not argue at the March 17, 2022 hearing), even a cursory review of the full contract shows he did receive them.

Defendant filed the Contract with the Court as an exhibit to its Motion to Dismiss. (*See* Dkt. #33.) The Court may consider documents referred to in a complaint without converting a Rule 12(b)(6) motion into a motion for summary judgment if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity. *See Cnty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). Where a plaintiff does not incorporate by reference or attach a document to his or her complaint, a defendant may submit an indisputably authentic copy which may be considered in ruling on a motion to dismiss. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Here, the Contract is central to Mr. Tucker's claims, and he included part of the first page of it in his Amended Complaint. (*See* Dkt. #11 at 14.) Mr. Tucker does not explicitly challenge the authenticity of Defendant's exhibit; instead, he argues that the dealership did not provide him with a complete copy of the Contract. However, Mr. Tucker signed or initialed every page of the four-page document. Indeed, even in the version he attached to his Amended Complaint, Mr. Tucker's signature is found in the

section adjacent to the TILA disclosures and on the same page that identifies the dealership as the "Seller-Creditor" (Dkt. #11 at 14), which undermines his argument that the Contract failed to "disclose the identity of the creditor." He also signed and initialed the page that included the "Itemization of Amount Financed" section. (Dkt. #33 at 3.) Finally, on the last page of the Contract, Mr. Tucker "confirm[ed] that [he] received a completely filled-in copy when [he] signed it. (*Id.* at 5.) Accordingly, Mr. Tucker cannot state a claim that he did not receive TILA disclosures or that those disclosures were inaccurate. *See GFF Corp.* 130 F.3d at 1385 ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."); *Rapoport v. Asia Electronics Holding Co., Inc.*, 88 F.Supp.2d 179, 184 (S.D.N.Y. 2000) ("If [the] documents contradict the allegations of the . . . complaint, the documents control and [the] court need not accept as true the allegations in the . . . complaint.").

## RECOMMENDATION

In light of the foregoing, it is hereby

**RECOMMENDED** that Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. 30) be **GRANTED**. It is further

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. #11) be **DISMISSED WITH PREJUDICE**. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that when a plaintiff is proceeding pro se, dismissal with prejudice is appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend" (quotation omitted)).

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:     April 7, 2022
           Denver, Colorado                    _____
                                               N. Reid. Neureiter
                                               United States Magistrate Judge